```
                    SUPREME COURT OF ARIZONA
                           En Banc
```

STATE OF ARIZONA,                )    Arizona Supreme Court
                                 )    No.  CR-01-0435-PR
                                 )
                      Appellee,) Court of Appeals
                                 )    Division One
     v.                          )    No.  1 CA-CR 00-0439
                                 )
LARRY D. THOMPSON,               )    Maricopa County Superior
                                 )    No.  CR 99-07826
                                 )
                      Appellant.)
_____)    **O P I N I O N**

              Appeal from the Superior Court in Maricopa County
                 The Honorable Bernard J. Dougherty, Judge

                             **AFFIRMED**

                 Opinion of the Court of Appeals, Division One
                   201 Ariz. 273, 34 P.3d 382 (App. 2001)

                             **VACATED**

JANET A. NAPOLITANO, ARIZONA ATTORNEY GENERAL          Phoenix
     by   Randall M. Howe, Chief Counsel,
          Criminal Appeals Section
     and  Joseph T. Maziarz, Assistant Attorney General
     and  Kerri L. Chamberlin, Assistant Attorney General  Tucson
Attorneys for Appellee

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER         Phoenix
     by   James R. Rummage, Deputy Public Defender
Attorneys for Appellant

**B E R C H**, Justice

¶1      Defendant Larry Thompson challenges the constitutionality

of Arizona's first degree murder statute, Ariz. Rev. Stat.

("A.R.S.") § 13-1105(A)(1) (2001).  He argues that the definition

of premeditation, which provides that "[p]roof of actual reflection is not required," eliminates any meaningful distinction between first and second degree murder and renders the first degree murder statute unconstitutionally vague. *See* A.R.S. § 13-1101(1) (2001). We accepted review to consider the constitutionality of the statute and to clarify both the meaning of premeditation and the State's burden of proof.

### BACKGROUND

**¶2** On May 17, 1999, Thompson shot and killed his wife, Roberta Palma.[1] Several days before the shooting, Palma had filed for divorce, and Thompson had discovered that she was seeing someone else. Just a week before the shooting, Thompson moved out of the couple's home. As he did so, Thompson threatened Palma that, "[i]f you divorce me, I will kill you."

**¶3** Thompson returned to the couple's neighborhood the morning of May 17. He was seen walking on the sidewalk near the home and his car was spotted in a nearby alley. Two witnesses reported that a man dragged a woman by the hair from the front porch into the home. That same morning, police received and recorded a 9-1-1 call from the house. The tape recorded a woman's screams and four gunshots. The four gunshots span nearly twenty-seven seconds. Nine seconds elapse between the first shot and the

---

[1] We review the facts in the light most favorable to sustaining the verdict. *State v. Gallegos*, 178 Ariz. 1, 9, 870 P.2d 1097, 1105 (1994).

-2-

third, and there is an eighteen-second delay between the third shot and the fourth.

¶4        Police arrived shortly after the call and found Palma dead from gunshot wounds.  An autopsy of her body revealed several fresh abrasions, five non-contact gunshot wounds, and one contact gunshot wound.

¶5        At trial, Thompson did not deny killing his wife, but claimed that he did so in the heat of passion, making the killing manslaughter or, at most, second degree murder.  During closing arguments, Thompson's counsel argued that the crime had occurred in the heat of passion and that Thompson had "simply snapped."

¶6        In her closing arguments, the prosecutor argued that the evidence that Thompson premeditated the murder was "overwhelming." She emphasized the timing of the shots and the delay between them. The prosecutor also reminded the jury of Thompson's threat, made a week before the murder, to kill his wife.  The prosecutor then argued that Thompson need not actually have reflected, but only had the time to reflect:  "But the main point to remember about premeditation is that premeditation is time to permit reflection. The instruction also tells you that actual reflection is not necessary, [only] the time to permit reflection." Nonetheless, the prosecutor referred to circumstantial evidence suggesting that Thompson actually had reflected, but then told the jury it need only decide that Thompson had the time to reflect, not that he

-3-

actually had reflected.

¶7     After closing arguments, the judge instructed the jury regarding premeditation as follows:

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection. Proof of actual reflection is not required, but an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.[2]

¶8     The jury found Thompson guilty of first degree murder and the judge sentenced him to life in prison without the possibility of parole. Thompson appealed, arguing that the definition of premeditation, particularly the clause stating that "[p]roof of actual reflection is not required," unconstitutionally relieved the State of the burden of proving the element of premeditation.

### DISCUSSION

¶9     Our consideration of the constitutionality of any statute must be founded on principles of statutory construction. Our primary role when construing a statute is "to determine and give effect to the legislat[ure's] intent in enacting the statute." *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). In attempting to ascertain the statute's meaning, "we consider the statute's context, the language used, the subject matter, the

---

[2]     This instruction is taken verbatim from A.R.S. § 13-1101(1) (1998).

-4-

historical background, the statute's effects and consequences, and the statute's spirit and purpose." *Id.*

¶10     Moreover, when considering a constitutional challenge to a statute, we begin with the premise that the statute is constitutional, *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 204, ¶ 11, 972 P.2d 179, 188 (1999), and we construe it "so as to preserve [its] constitutionality wherever possible." *State v. Soto-Fong*, 187 Ariz. 186, 202, 928 P.2d 610, 626 (1996). Thus, we construe statutes sensibly, attempting to effectuate the intent of the legislature, and we avoid constructions that would render statutes invalid or parts of them meaningless. *Mendelsohn v. Superior Court*, 76 Ariz. 163, 169, 261 P.2d 983, 988 (1953).

¶11     The statute at issue, Arizona's first degree murder statute, provides that "[a] person commits first degree murder if . . . [i]ntending or knowing that the person's conduct will cause death, the person causes the death of another *with* premeditation."[3] A.R.S. § 13-1105(A)(1) (emphasis added). Thompson challenges the constitutionality of the statute, arguing that it renders first degree murder indistinguishable from second degree murder. A person commits second degree murder in Arizona "if *without* premeditation . . . [s]uch person intentionally causes the death of

---

[3]     First degree murder also includes felony murder and the intentional or knowing murder of a law enforcement officer. A.R.S. § 13-1105(A)(2), (3). Thompson was not prosecuted under either of those definitions, so they are not at issue.

-5-

another person." A.R.S. § 13-1104(A)(1) (2001) (emphasis added). Thus, for the purposes of this appeal, first and second degree murder are indistinguishable except that first degree murder requires premeditation.

¶12    According to the definition adopted by the legislature,

> "[p]remeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection. *Proof of actual reflection is not required*, but an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13-1101(1) (emphasis added).[4]

¶13    The question before us is whether this definition of premeditation abolishes the requirement of actual reflection altogether, whether it eliminates the requirement of direct proof of actual reflection, or whether it substitutes for the necessary proof of actual reflection the mere passage of enough time to permit reflection. The State asserts the third interpretation, that the legislature intended to relieve the State of the burden of proving a defendant's hidden thought processes, and that this definition of premeditation establishes that the passage of time may serve as a proxy for reflection. The court of appeals agreed with this interpretation.

---

[4]    We know of no other state, nor have the parties alerted us to one, that includes the clause "[p]roof of actual reflection is not required" in its definition of premeditation.

-6-

¶14     Thompson maintains that reducing premeditation to the mere passage of time renders the statute vague and unenforceable because courts have held that actual reflection can occur as quickly as "successive thoughts of the mind." *E.g., Macias v. State*, 36 Ariz. 140, 150, 283 P. 711, 715 (1929). Thus, he argues and the court of appeals agreed, the difference between first and second degree murder has been eliminated.

¶15     Although the legislature may classify crimes as it sees fit, it must do so in a way that is not arbitrary or capricious. *State v. Leeman*, 119 Ariz. 459, 462, 581 P.2d 693, 696 (1978). Laws must provide explicit standards for those charged with enforcing them and may not "impermissibly delegate[] basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2299 (1972); *see also Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03, 86 S. Ct. 518, 520-21 (1966) (stating that "a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves . . . judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case"). Accordingly, for the first degree murder statute to be constitutional, the definition of premeditation must provide a meaningful distinction between first and second degree murder. We turn now to a review of how premeditation has provided

that distinction in Arizona.

**A.    History of the First Degree Murder Statute in Arizona**

¶16        For most of this state's history, first degree murder explicitly required proof of "premeditation," or actual reflection by the defendant.  *See Macias*, 36 Ariz. at 149, 283 P. at 714-15 ("In order that a killing shall be murder in the first degree . . . it must be shown that a plan to murder was formed after the matter had been made a subject of deliberation and reflection . . . ."); *State v. Magby*, 113 Ariz. 345, 352, 554 P.2d 1272, 1279 (1976) (upholding a jury instruction that read "[i]n order to find a deliberate and premeditated killing you must find more reflection on the part of the defendant than is involved in the mere formation of the specific intent to kill").

¶17        Because premeditation involves a defendant's thought processes, the question arose how to prove that a defendant had reflected on the decision to kill.  Courts responded by allowing the issue to be proved by circumstantial evidence.  *E.g., Moore v. State*, 65 Ariz. 70, 75-76, 174 P.2d 282, 285 (1946) (quoting 40 C.J.S. *Homicide* § 192 for the proposition that deliberation and premeditation may be "inferred from the facts and circumstances of the killing").  Indeed, at one time, the murder statute set forth fact patterns that suggested premeditation:  "poison, lying in wait, torture, or when the killing is done in the perpetration or attempt to perpetrate certain felonies.  If none of these elements

-8-

appear, the evidence must show in some manner that the killing was 'wilful, deliberate and premeditated.'" *Id.* at 75, 174 P.2d at 285 (describing former A.R.S. § 43-2902).

¶18  In 1978, however, premeditation was redefined to mean

> that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13-1101(1) (1978). This definition highlights the time element, speaking, as it does, in terms of intention or knowledge that precedes the killing by enough time to allow reflection and excluding killings that occur as a result of a sudden quarrel.

¶19  When considering this definition of premeditation, this court has expressed concern regarding the emphasis on the passage of time. *See State v. Guerra*, 161 Ariz. 289, 778 P.2d 1185 (1989). Noting that "a jury may be misled by an instruction placing undue emphasis on the rapidity with which premeditation can occur," *id.* at 294, 778 P.2d at 1190, we nonetheless found no reversible error in a jury instruction on premeditation that read as follows:

> The time for reflection need not be prolonged and there need be no appreciable space of time between the intention to kill unlawfully and the act of killing.
>  It may be as instantaneous as the successive thoughts of the human mind, however it must be longer than the time required to form the intent or knowledge that such conduct will cause death. An act is not done with premeditation if it is the instant effect of a

-9-

sudden quarrel or heat of passion.

*Id.* at 293-94, 778 P.2d at 1189-90. We affirmed Guerra's conviction because the instruction, considered as a whole, was sufficiently balanced to withstand scrutiny. *Id.* at 294, 778 P.2d at 1190; *see also State v. Eastlack*, 180 Ariz. 243, 259, 883 P.2d 999, 1015 (1994).

¶20      Since that time, this court has continued to stress that the state must show actual reflection by a defendant to prove first degree murder and to minimize the emphasis placed on the mere passage of time as a proxy for proving reflection. For example, while acknowledging that premeditation can occur as instantaneously as "successive thoughts of the mind," we have nonetheless required proof, whether direct or circumstantial, of actual reflection. *See State v. Willoughby*, 181 Ariz. 530, 539, 892 P.2d 1319, 1328 (1995) ("Premeditation is established by evidence of a plan to murder formed after deliberation and reflection."); *State v. Kreps*, 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985) (same).

¶21      Despite these cautions, however, litigants over time have injected confusion into the analysis of premeditation through inappropriate emphasis on the time element in cases in which there was evidence, whether direct or circumstantial, of actual reflection. To stem the confusion, the court of appeals decided *State v. Ramirez*, 190 Ariz. 65, 945 P.2d 376 (App. 1997), explicitly holding that premeditation requires actual reflection.

-10-

The appeals court reasoned that defining premeditation as a length of time that can be instantaneous "obliterates any meaningful difference between first and second degree murder – other than the penalties." *Id.* at 69, 945 P.2d at 380. It concluded that "[i]f the difference between first and second degree murder is to be maintained, premeditation has to be understood as reflection." *Id.*

¶22 But other courts in this state disagreed with *Ramirez*. In *State v. Haley*, for example, the court of appeals found that "premeditated murder requires only that the defendant's intent to kill . . . precede the killing by a sufficient period of time to permit reflection, and does not require actual reflection." 194 Ariz. 123, 125, ¶ 9, 978 P.2d 100, 102 (App. 1998).

**B. The Current Definition of Premeditation**

¶23 To resolve the conflict and clarify the distinction between first and second degree murder, the legislature amended the definition of premeditation in 1998 to include the clause "[p]roof of actual reflection is not required." A.R.S. § 13-1101(1). This amendment, however, has not eliminated the confusion regarding the interpretation of premeditation. Indeed, it may have compounded it. In this case, the court of appeals interpreted the legislature's 1998 amendment of A.R.S. § 13-1101(1) as ensuring "that premeditation was defined solely as the passage of a period of time, . . . eliminat[ing] actual reflection as part of the definition, and . . . overrul[ing] the case law to the contrary."

-11-

*State v. Thompson*, 201 Ariz. 273, 278, ¶ 15, 34 P.3d 382, 387 (App. 2001).[5]

**¶24**      Nonetheless, the court concluded that the statute was not constitutionally infirm because it determined that "a fair reading of the statute, combined with a common-sense consideration of how jurors perform their function, demonstrates that the time period employed by the statute to describe premeditation has enough substance to provide a workable method for distinguishing between degrees of murder."  *Id.* at 278, ¶ 16, 34 P.3d at 387.  The court reasoned that only when the phrase "any length of time to permit reflection" is understood in light of the cases allowing the "time to permit reflection" to be as "instantaneous as successive thoughts of the mind" that the statute became unconstitutionally standardless.  *Id.* at 280-81, ¶¶ 25, 27, 34 P.3d at 389-90.  Thus, the court of appeals concluded that the statute is constitutional in the case now before us, but is unconstitutional when a jury is instructed that reflection can occur as quickly as successive thoughts of the mind, for "when premeditation is just an instant of

_____

        [5]      Division Two of the Arizona Court of Appeals came to a similar conclusion in *State v. Booker*, 203 Ariz. 284, 53 P.3d 635 (App. 2002).  The court held the statute constitutional, reasoning that if the legislature defined premeditation as the time necessary to permit reflection, "then that period of time is a fortiori sufficient to permit reflection."  *Id.* at 289, ¶¶ 11, 12, 53 P.3d at 640.  In addition, it concluded that the instruction that a murder is not premeditated "if it is the instant effect of a sudden quarrel or heat of passion" adequately advised the jury that "an act cannot be both impulsive and premeditated."  *Id.* (quoting A.R.S. § 13-1101(1) and *Ramirez*, 190 Ariz. at 71, 945 P.2d at 382).

-12-

time and nothing more, irrebuttable evidence of premeditation will exist in every case of intentional or knowing murder." *Id.* at 281-82, ¶¶ 29-33, 34 P.3d at 390-91; *see also State v. Cecil*, 201 Ariz. 454, 36 P.3d 1224 (App. 2001) (same).

¶25    We have not, until this case, had the opportunity to address the confusion surrounding the issue of premeditation. *See State v. Van Adams*, 194 Ariz. 408, 415, ¶ 18 n.4, 984 P.2d 16, 23 n.4 (1999) (declining to address contradictory conclusions in *Ramirez* and *Haley* because the issue was not properly before the court). Thompson urges us to overturn his conviction on the ground that the statute is unconstitutionally vague. The State, on the other hand, argues that the statute is constitutional and that the current definition of premeditation meaningfully distinguishes between first and second degree murder.

¶26    We conclude, as did the court of appeals, that if the only difference between first and second degree murder is the mere passage of time, and that length of time can be "as instantaneous as successive thoughts of the mind," then there is no meaningful distinction between first and second degree murder. Such an interpretation would relieve the state of its burden to prove actual reflection and would render the first degree murder statute impermissibly vague and therefore unconstitutional under the United States and Arizona Constitutions.

¶27    We are, however, mindful of our duty to construe this

-13-

statute, if possible, in a way that not only gives effect to the legislature's intent, *see Korzep*, 165 Ariz. at 493, 799 P.2d at 834, but also in a way that maintains its constitutionality. *See Soto-Fong*, 187 Ariz. at 202, 928 P.2d at 626. As a starting point, we note that the words chosen by the legislature do not say that actual reflection is no longer required to distinguish first from second degree murder. Rather, the legislature provided that "*[p]roof of* actual reflection is not required." A.R.S. § 13-1101(1) (emphasis added). Recognizing that direct proof of a defendant's intent to kill often does not exist, the legislature sought to relieve the state of the often impossible burden of proving premeditation through direct evidence. But by this act the legislature did not intend to eliminate the requirement of reflection altogether or to allow the state to substitute the mere passing of time for the element of premeditation. While the phrase "proof of actual reflection is not required" can be interpreted in a way that relieves the state of the burden of proving reflection, such an interpretation would not pass constitutional scrutiny, and the legislature could not have intended such a result.[6]

---

[6] To prove a criminal offense, the government must prove both that a criminal act occurred and that the defendant had the requisite mental state. *See, e.g.*, A.R.S. § 13-101(3) (2001). It is this mental state that distinguishes between first and second degree murder. To redefine premeditation as a moment of time that may be "instantaneous" renders the distinction meaningless. It allows a defendant's culpability to turn "on the ticking of a clock, and not on any differential act, omission, or accompanying mental state." *State v. Zamora*, No. 1 CA-CR 01-0469, 2003 WL

Accordingly, we conclude that the legislature intended to relieve the state of the burden of proving a defendant's thought processes by direct evidence. It intended for premeditation, and the reflection that it requires, to mean more than the mere passage of time.

¶28 We find support for our interpretation in the admonition that "an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." *Id.* This language distinguishes impulsive killings from planned or deliberated killings and confirms the legislature's intent that premeditation be more than just a snap decision made in the heat of passion.

¶29 Our decision today distinguishes the *element* of premeditation from the *evidence* that might establish that element. Although the mere passage of time suggests that a defendant premeditated – and the state might be able to convince a jury to make that inference – the passage of time is not, in and of itself, premeditation.[7] To allow the state to establish the element of

_____

352464, at *8 (Ariz. App. Feb. 18, 2003) (Fidel, J., dissenting). An offense so defined does not "give fair warning" whether conduct will be punished as first degree murder rather than second, *see* A.R.S. § 13-101(2), nor does it "differentiate on reasonable grounds between [first and second degree murder]." *Id.* § 13-101(4). Such a chance result does not satisfy the requirements of due process.

[7] Part of the confusion, we believe, stems from the unfortunate use of the adjective "actual" to describe reflection. It is unquestioned that the state must prove the defendant's "actual" intent or knowledge in a first degree murder case, yet there is no suggestion – nor could one reasonably be made – that

-15-

premeditation by merely proving that sufficient time passed to permit reflection would be to essentially relieve the state of its burden to establish the sole element that distinguishes between first and second degree murder.

¶30        Indeed, even those jurists who interpret the amended definition of premeditation to mean only the passage of time to permit reflection seem to assume that a jury will eventually determine that actual reflection occurred before convicting of premeditated murder.  *See Cecil*, 201 Ariz. at 456, ¶ 11, 36 P.3d at 1226 (Weisberg, J., concurring) (stating that "the judiciary and the legislature have left it to the jury to examine the particular facts and circumstances of each case and determine from those facts and circumstances whether the defendant had sufficient time to premeditate, *and* whether he did so");  *Thompson*, 201 Ariz. at 284, ¶ 47, 34 P.3d at 393 (Ehrlich, J., concurring) (positing that "'premeditation' is a period of time during which the mind actually considers the performance of an act").

¶31        As we noted earlier, only in rare situations will a defendant's reflection be established by direct evidence such as diary entries or statements to others.  *See Ramirez*, 190 Ariz. at 69, 945 P.2d at 380 ("Premeditation can, of course, be proven by

---

the state must prove with direct evidence the element of intent or knowledge.  We allow the state to satisfy its burden with circumstantial evidence of intent or knowledge.  The state's burden is the same when establishing the element of premeditation.

circumstantial evidence; like knowledge or intention, it rarely can be proven by any other means."); *Thompson*, 201 Ariz. at 284, ¶ 48, 34 P.3d at 393 (Ehrlich, J., concurring, noting that premeditation relates to "mental processes," which are not always susceptible to "proof of actual reflection"). But the state may use all the circumstantial evidence at its disposal in a case to prove premeditation. Such evidence might include, among other things, threats made by the defendant to the victim, a pattern of escalating violence between the defendant and the victim, or the acquisition of a weapon by the defendant before the killing. In short, the passage of time is but one factor that can show that the defendant actually reflected. The key is that the evidence, whether direct or circumstantial, must convince a jury beyond a reasonable doubt that the defendant actually reflected.

## C.  Jury Instruction

¶**32**     Our review of the case law in this area uncovered various jury instructions relating to the definition of premeditation. These instructions are intended to inform jurors of the law applicable to the case in terms that the jurors can readily understand. *In re Leon G.*, 389 Ariz. Adv. Rep. 6, 11, ¶ 32, 59 P.3d 779, 788 (2002). We recognize that premeditation should be defined for the jury. But we also recognize that the statutory definition of premeditation may not explain it in an easily understandable way and, indeed, might mislead the jury. Thus, we

disapprove of the use of the phrase "proof of actual reflection is
not required" in a jury instruction.  As we explained above, that
phrase merely relieves the state of the burden of proving with
direct evidence that a defendant reflected; it does not relieve the
state of its burden of proving reflection.  Whether the state
proves reflection through direct evidence or through circumstantial
evidence will be determined by the facts of each case.[8]  We also
discourage the use of the phrase "as instantaneous as successive
thoughts of the mind."  We continue to be concerned that juries
could be misled by instructions that needlessly emphasize the
rapidity with which reflection may occur.  Accordingly, trial
judges should, in future cases, instruct juries as follows:

> "Premeditation" means that the defendant
> intended to kill another human being [knew
> he/she would kill another human being], and
> that after forming that intent [knowledge],
> reflected on the decision before killing.  It
> is this reflection, regardless of the length
> of time in which it occurs, that distinguishes
> first degree murder from second degree murder.
> An act is not done with premeditation if it is
> the instant effect of a sudden quarrel or heat
> of passion.

Only when the facts of a case require it should a trial judge
instruct the jury, or may the state argue, that "the time needed
for reflection is not necessarily prolonged, and the space of time

---

[8]      We note that juries are routinely instructed that facts
may be proved by direct or circumstantial evidence.  *See* Revised
Arizona Jury Instructions Standard Criminal 24 (direct and
circumstantial evidence) (1997).

-18-

between the intent [knowledge] to kill and the act of killing may be very short." It is the act of premeditation and not the length of time available that determines the question.

¶33     This instruction does not mean that the state must rely on direct evidence of premeditation; as we have noted, such evidence is rarely available. Nor does this instruction mean that the state cannot rely on the passage of time between the formation of intent and the act of killing as a fact tending to show premeditation. This instruction merely clarifies that the state may not use the passage of time as a proxy for premeditation. The state may argue that the passage of time *suggests* premeditation, but it may not argue that the passage of time *is* premeditation.

¶34     In the case before us, the jury was instructed that "proof of actual reflection is not required." We hold that, without further clarification, this instruction was erroneous. The State also argued that it did not have to prove actual reflection, but had to prove only that enough time had elapsed to allow reflection. This, too, was in error. However, the jury was not instructed that actual reflection can occur as instantaneously as successive thoughts of the mind. Moreover, the State presented overwhelming evidence that Thompson actually reflected on his decision to kill his wife, including evidence of threats to kill her a week before the murder, the time that elapsed between each gunshot, and the victim's screams as recorded on the 9-1-1 tape

-19-

between each gunshot.  We conclude beyond a reasonable doubt that the flawed jury instruction and the State's reliance on that instruction did not affect the jury's verdict, and we will not overturn Thompson's conviction and sentence.  *See State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993).

## CONCLUSION

¶35     As we have interpreted it, we find the definition of premeditation in Arizona's first degree murder statute, A.R.S. § 13-1105(A)(1), constitutional.  We vacate the opinion of the court of appeals, but affirm Thompson's conviction and sentence for first degree murder.


_____
                                Rebecca White Berch, Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Stanley G. Feldman, Justice (retired)


**R Y A N,** Justice, CONCURRING IN PART AND DISSENTING IN PART:

¶36     The court of appeals in *State v. Ramirez,* 190 Ariz. 65, 69, 945 P.2d 376, 380 (App. 1997), held that the 1978 statutory

-20-

definition of premeditation, along with the instruction that premeditation may be as instantaneous as successive thoughts of the mind, "obliterates any meaningful difference between first and second degree murder--other than the penalties." The *Ramirez* court concluded that juries should be instructed that "premeditation requires actual reflection." *Id*. at 70, 945 P.2d at 381. In obvious disagreement with the *Ramirez* decision, the legislature responded in 1998 by amending the definition of premeditation. *See* 1998 Ariz. Sess. Laws, ch. 289, § 6. That legislation amended Arizona Revised Statutes ("A.R.S.") section 13-1101(1) (2001), by adding to the definition of premeditation the phrase, "[p]roof of actual reflection is not required." Yet, today this court adds to the definition of premeditation that which the legislature expressly excluded. Therefore, while I agree with affirming the conviction here, I disagree with the majority's conclusion that the statutory definition of premeditation requires evidence of actual reflection. Accordingly, I respectfully dissent from those portions of the opinion holding that actual reflection must be proven.

¶37 I begin with several principles of statutory construction. First, it is the province of the legislature to define crimes. *State v. DePiano,* 187 Ariz. 27, 38, 926 P.2d 494, 505 (1996) (Zlaket, J., concurring in part, dissenting in part); *State v. Hickey,* 114 Ariz. 394, 396-97, 561 P.2d 315, 317-18

(1977). Second, a statute must not be written so vaguely that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). However, "[d]ue process requires neither perfect notice, absolute precision nor impossible standards" when defining a crime. *Fuenning v. Superior Court*, 139 Ariz. 590, 598, 680 P.2d 121, 129 (1983). Due process "requires only that the language of a statute convey a definite warning of the proscribed conduct." *Id.* Third, a statute's language is the "the best and most reliable index" of its meaning. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Finally, it is not the province of the judiciary to add language to a statute that the legislature expressly excluded. *City of Phoenix v. Butler*, 110 Ariz. 160, 162, 515 P.2d 1180, 1182 (1973) (finding choice of appropriate statutory wording "rests with the Legislature, and the court may not substitute its judgment for that of the Legislature")*; Diaz v. Ariz. Dept. of Transp.*, 186 Ariz. 59, 62, 918 P.2d 1077, 1080 (App. 1996) ("The judiciary should not . . . add to a statute that which the legislature deemed unnecessary.") (citation omitted).

¶38     With these principles in mind, I turn to the first degree murder statute at issue here and the definition of premeditation. Thompson was convicted of violating A.R.S. section 13-1105(A)(1),

-22-

which defines first degree murder as an intentional or knowing killing of another person with premeditation.   Premeditation is defined as follows:

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection. Proof of actual reflection is not required, but an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13-1101(1).  The majority finds that when the legislature added the phrase "[p]roof of actual reflection is not required" to the definition of premeditation, "the legislature did not intend to eliminate the requirement of reflection altogether or to allow the state to substitute the mere passing of time for the element of premeditation."  *Supra,* at ¶ 27.   This finding is based on the assumption that "the legislature sought to relieve the state of the often impossible burden of proving premeditation through *direct* evidence."  *Id*. (emphasis added).

¶39      But there can be no doubt that the legislature intended to eliminate any requirement that the state prove actual reflection, whether by direct or circumstantial evidence.  First, the plain language of the definition of premeditation specifically excludes any requirement that the state prove a defendant actually reflected.  *See* A.R.S. § 13-1101(1).  Second, the Senate Fact Sheet on the proposed amendment states that the amended statute "[e]liminates the requirement that the prosecution show proof of

-23-

actual reflection in order to establish premeditation in homicide cases." Arizona State Senate, Final Revised Fact Sheet for S.B. 1278 (dated July 13, 1998), 43rd Leg., 2nd Reg. Sess. (1997). Third, "[w]e presume that the legislature knows the existing case law when it . . . modifies a statute. Additionally, we presume that by amending a statute, the legislature intend[ed] to change the existing case law." *State v. Garza-Rodriquez*, 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990) (citation omitted). The *Ramirez* court specifically stated that reflection "may be proved by *direct* or circumstantial evidence." 190 Ariz. at 71, 945 P.2d at 382 (emphasis added). When the legislature added the phrase, "[p]roof of actual reflection is not required," it unmistakably intended to change "existing case law" and relieve the state of proving reflection, whether by direct or circumstantial evidence. Legislative intent could not have been more clearly expressed.

¶**40** Despite this clear expression of legislative intent, the majority concludes that the state must produce evidence, "whether direct or circumstantial," that a defendant "actually reflected." *Supra*, at ¶ 31. Such evidence is required, the majority claims, for the statute to "pass constitutional scrutiny." *Supra,* at ¶ 27.

¶**41** Unlike my colleagues, I do not find the legislature's decision to eliminate proof of actual reflection and instead rely, in part, on the passage of enough "time to permit reflection," makes the statute unconstitutional. The definition of

premeditation must be read as a whole.  *See State v. Eastlack,* 180 Ariz. 243, 259, 883 P.2d 999, 1015 (1994).  And read as a whole, I think the statute adequately distinguishes between an intentional or knowing second degree murder and an intentional or knowing first degree murder.

¶42     To prove the element of premeditation, the state must satisfy three statutory factors.  First, there must be proof that the defendant acted "with either the intention or the knowledge that he [would] kill another human being."  A.R.S. § 13-1101(1).  Second, there must be proof that such intention or knowledge preceded the killing "by any length of time to permit reflection."  *Id.*  Third, while "[p]roof of actual reflection is not required," there must be evidence that the killing was not the result of a "sudden quarrel or heat of passion."  *Id*.  These three factors combine to define a cold-blooded killing.  By requiring proof that a defendant had sufficient time to permit reflection, coupled with requiring proof that a defendant did not act under the influence of a sudden quarrel or heat of passion, the legislature established a discernible standard for determining whether a killing is first degree murder.  If the facts demonstrate that the murder occurred during a quarrel, or as a result of impulsive behavior, it necessarily follows that the defendant's accompanying state of mind was such that he had insufficient time in which he could have reflected. Consequently, the definition of premeditation merely

requires jurors to apply a reasonable person standard to the facts and circumstances of the case. "This is not dissimilar to asking jurors to determine whether an individual acted 'reasonably' or to resolve other conflicts similarly elusive but dependent upon the human experience." *State v. Thompson*, 201 Ariz. 273, 285, ¶ 48, 34 P.3d 382, 394 (App. 2001) (Ehrlich, J., concurring).

¶43    The majority, however, concludes that "if the only difference between first and second degree murder is the mere passage of time, and that length of time can be 'as instantaneous as successive thoughts of the mind,' then there is no meaningful distinction between first and second degree murder." *Supra*, at ¶ 26. But as discussed above, the mere passage of time is not the only distinction between first and second degree murder. The state must also prove that the killing was not done under the influence of a quarrel or heat of passion. This latter requirement focuses the jury's assessment of the facts relating to the time factor; it requires the jury to find that a defendant's accompanying state of mind be such that the killing is not the result of an impulsive act. If the facts support such a finding, a conviction for first degree murder is neither arbitrary nor capricious. *See State v. Booker*, 203 Ariz. 284, 289, ¶ 11, 53 P.3d 635, 640 (App. 2002) (holding that the limiting language of A.R.S. section 13-1101(1)- that a murder is not premeditated "if it is the instant effect of a sudden quarrel or heat of passion"-"adequately conveys the

-26-

concept that 'an act cannot be both impulsive and premeditated.'" (quoting *Ramirez*, 190 Ariz. at 71, 945 P.2d at 382)).

¶44        I find support for my conclusion in *State v. Guerra*, 161 Ariz. 289, 778 P.2d 1185 (1989). There, this court examined an instruction that, in defining premeditation, emphasized the rapidity with which premeditation could occur. *Id.* at 293-94, 778 P.2d at 1189-90. The court stated that "a jury may be misled" when an instruction places "undue emphasis on the rapidity with which premeditation can occur." *Id*. at 294, 778 P.2d at 1190. However, the court concluded that "the remaining portions of the instructions clarified the definition of premeditation." *Id*. The clarifying language included the phrase from A.R.S. section 13-1101(1) that "[a]n act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." *Id.; see also Eastlack*, 180 Ariz. at 259, 883 P.2d at 1015.[9] Accordingly,

---

[9]        In my view, *Guerra* and *Eastlack* refute the court of appeals' conclusion in this matter that this court judicially interpreted the premeditation statute's language in such a way as to render it unconstitutionally vague. *Thompson*, 201 Ariz. at 281, ¶ 32, 34 P.3d at 390. The court of appeals asserted that this court interpreted the "instantaneous as successive thoughts of the mind" language "as an integral part of the statute [defining premeditation]." *Id*. at 280, ¶¶ 23, 25, 34 P.3d at 389 (citation omitted). While this court may have used that language in assessing whether the evidence supported giving an instruction on premeditation, *see, e.g.*, *State v. Hutton*, 143 Ariz. 386, 389, 694 P.2d 216, 219 (1985), both *Guerra* and *Eastlack* cautioned against using such language when instructing juries. *See also Moore v. State*, 65 Ariz. 70, 82, 174 P.2d 282, 290 (1946) (noting that while time for deliberation and premeditation may be brief, a jury "must not be misled into thinking that an act can at the same time be hasty, hurried, and deliberate or impulsive, unstudied, and

-27-

as long as a jury is instructed that a premeditated murder cannot occur when there is a sudden quarrel or heat of passion, the difference between first and second degree murder is adequately distinguished for a jury to make an objective assessment of the facts to determine if an intentional or knowing killing was first degree murder.

¶45    The conclusion I reach in this case is one of long standing.  In *Commonwealth v. Drum,* 58 Pa. 9, 16 (1868), the court explained the interplay between the speed at which premeditation can occur and the requirement that the defendant not be under the influence of a sudden quarrel or heat of passion.

> [*N*]o time is too short for a wicked man to frame in his mind his scheme of murder, and to contrive the means of accomplishing it.  But this expression must be qualified, lest it mislead.  It is true that such is the swiftness of human thought, that no time is so short in which a wicked man may not form a design to kill . . . yet this suddenness is opposed to premeditation, and a jury must be well convinced upon the evidence that there was time to deliberate and premeditate.  The law regards, and the jury must find, the actual intent; that is to say the fully formed purpose to kill, with so much time for deliberation and premeditation, as to convince them that this purpose is not the immediate offspring of rashness and impetuous temper, and that the mind has become fully conscious of its own design.

*Id.* (citations and internal quotations omitted).  *See also, e.g., Tichnell v. State,* 415 A.2d 830, 842 (Md. 1980); *Clarke v. State,* 402 S.W.2d 863, 867-68 (Tenn. 1966); *Leighton v. People,* 88 N.Y.

premeditated").  Neither this court nor the legislature has adopted the "instantaneous" language as a requirement when instructing juries.

117, 120 (1882).

**¶46**      Perhaps as one commentator contends, premeditation fails "as the dividing line between degrees of murder." Matthew A. Pauley, *Murder by Premeditation,* 36 Am. Crim. L. Rev. 145, 169 (1999).    Nonetheless, our legislature has chosen to use premeditation as that dividing line. By using the passage of time as a substitute for actual reflection, while at the same time requiring that a killing not be "the instant effect of a sudden quarrel or heat of passion," A.R.S. section 13-1101(1), the legislature has drawn a discernible line between intentional or knowing first degree murder and intentional or knowing second degree murder.    That is all the constitution requires. *See Fuenning*, 139 Ariz. at 598, 680 P.2d at 129.

**¶47**      In sum, I conclude the definition of premeditation as statutorily defined is not unconstitutionally vague. As such, I see no need to rewrite the statute to require the state prove a defendant actually reflected, whether by direct or circumstantial evidence. Finally, I would approve an instruction that tracks the statutory language of A.R.S. section 13-1101(1), and suggest that trial courts refrain from instructing juries that the time to reflect may be "as instantaneous as successive thoughts of the mind."[10]

---

      [10]    Instructing juries "strictly on the statutory definition of premeditation would be more precise and less susceptible to confusion and claims of error." *Booker*, 203 Ariz. at 290 n.8, 53

¶48    For the foregoing reasons, I concur with the majority in affirming the conviction in this case, but dissent from the majority's interpretation of A.R.S. section 13-1101(1).

_____
Michael D. Ryan, Justice

_____

P.3d at 641 n.8. Moreover, in light of the statutory definition of premeditation, the "instantaneous as successive thoughts" language arguably is a comment on the evidence. *See State v. Roscoe*, 182 Ariz. 332, 335, 897 P.2d 634, 637 (App. 1994) ("An instruction is an improper comment when it expresses an opinion as to what the evidence shows or does not show, or when it assumes as proven a disputed fact."), *vacated on other grounds*, 185 Ariz. 68, 912 P.2d 1297 (1996).